133Michael Lee (ML 6353)
Lee Law PLLC
57 West 38th Street, 11th Floor
New York, NY 10018
Telephone: (212) 621-8239

Gerald N. Saggese III (GS 5346)
Whitman Breed Abbot & Morgan LLC
500 West Putnam Avenue
Greenwich, CT 06830
Telephone: (203) 862-2331

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAZE LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> CHARLIE DUNCAN GREEN, <br><br> *Defendant*. | CASE NO. 7:24-CV-256 <br><br> **COMPLAINT** |

Plaintiff Jaze Ltd. ("Plaintiff"), through its attorneys complaining of defendant Charlie Duncan Green ("Defendant") (Plaintiff and Defendant are hereinafter collectively referred to as the "Parties") hereby allege as follows:

**STATEMENT OF THE CASE**

1. Plaintiff is the holding company for the social media influencer known as "Jaze Cinema." With over 3.8 billion lifetime views, 11 million subscribers on the www.YouTube.com platform ("YouTube"), and over 2 million followers on the www.TikTok.com platform, Plaintiff is a well-known content creator of original content concerning video game animations.

2. In June 2009, Plaintiff made its first YouTube channel which originally provided

1

video gameplay and commentary. Several years later, Plaintiff pivoted to creating original content consisting mainly of animations based on video games. Plaintiff's content primarily focuses on original animations related to the "Five Nights at Freddy's" video game franchise.

3. As part of its content creation, Plaintiff routinely hires animators and musicians to provide content to be included in Plaintiff's videos. These contractors sign a "Licensing Agreement" whereby Plaintiff is granted the right to use the contractor's intellectual property. As part of these agreements, the licensors make "Representations and Warranties" that they have "…the power and authority…[to] grant the associated rights…" and the provided content "…does not violate or infringe the copyrights…of any third parties."

4. Since 2017, Plaintiff has routinely licensed musical compositions from Defendant. The Parties have entered a number of "Licensing Agreements" similar to the contract at issue.

5. Defendant signed such a "Licensing Agreement" for the musical composition entitled "I Got No Time" (hereinafter referred to as the "Licensed Song") for Plaintiff's use and reproduction in the video entitled "FNAP Song: "I Got No Time" (hereinafter referred to as the "YouTube Video").

6. Subsequently, a third-party asserted a claim to YouTube that the YouTube Video improperly contained its copyrighted content that Plaintiff did not properly license. When Plaintiff informed Defendant, or his agents, that Plaintiff received a copyright claim for the YouTube Video, Defendant, or his agents, informed Plaintiff that Defendant, contrary to the representation set forth in the "Licensing Agreement," did not own the underlying copyright to the Licensed Song or the right to license the Licensed Song and that Plaintiff would need to seek an additional license from the actual copyright owner.

7. Therefore, Defendant knowingly and willfully breached the "Licensing

Agreement" and committed fraud on Plaintiff to Plaintiff's severe determinant.

8. As a result of said knowing and willful breach of contract and fraud upon Plaintiff, Plaintiff lost the costs of the licensing fee, the YouTube revenue associated with 53.9 million views on YouTube, and costs and legal fees associated therewith.

9. Plaintiff needs to be compensated for the loss of the ill-gotten licensing fee paid to Defendant; the lost revenue associated with claimed views, which Plaintiff estimates to be at least $200,000.00; and irreparable damage to Plaintiff's channel and its business relationship with YouTube.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 as the Parties are citizens of England and the United States and the amount in controversy is greater than $75,000.

11. Further, in the contract entered between Plaintiff and Defendant the parties consented to jurisdiction in New York.

12. Defendant is subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

14. Plaintiff is a company duly organized and existing under the laws of England and having its principal place of business located at 5 Ribblesdale Place, Preston, England PR1 8BZ. Plaintiff is the holding company for its Managing Director's, James Eagleton ("Eagleton"), YouTube channels and intellectual property.

15. Upon information and belief, Defendant is an individual residing in the State of Arizona and residing at 1098 E Regent Dr., Golbert, AZ 85298.

## FACTUAL ALLEGATIONS

**A. Plaintiff's Famous YouTube Channel**

16. On or about June 4, 2009, Eagleton created a YouTube channel to view content on YouTube. Several years later, Eagleton began to create content and put it on his most viewed channel found at https://www.youtube.com/channel/UC3oPy4QGH5q9txrra13FjgQ (the "Channel").

17. Three (3) years later, Eagleton gained enough success on YouTube requiring him to create several channels, make YouTube a full-time occupation, and form a company to hold his channels and content.

18. The Channel grew into one of the most followed and viewed channels in gaming on YouTube. The Channel's content consists of animation, music videos, and other content concerning video games with a focus on the "Five Nights at Freddy's" video game. As of the filing of this Complaint, the Channel, and Plaintiff's other YouTube channels, have amassed over 11 million subscribers and over 3.8 billion lifetime views. Due to this success, Plaintiff has received worldwide recognition for its content.

19. As Plaintiff's popularity grew so did its entertainment enterprise. Plaintiff started numerous channels on YouTube and Plaintiff began hiring independent contractors to provide animations and music that Plaintiff would use in its videos.

**B.      Plaintiff's Contract with Defendant**

20. In 2017, Plaintiff reached out to Defendant, a musician, to seek his permission to place Defendant's song in a video posted on the Channel.

4

21. On or about August 3, 2017, Defendant responded to Plaintiff's inquiry and granted Plaintiff permission to use Defendant's music. This was the beginning of the business relationship between the Parties.

22. Thereafter, the Parties entered into a number of "Licensing Agreements" covering the licensing of music. During the course of this business relationship, no issue had arisen concerning the copyright ownership of the musical works licensed by Defendant to Plaintiff until the matter at issue.

23. On or about June 23, 2019, the parties entered another "Licensing Agreement" whereby Defendant granted Plaintiff the right to use and exploit the Licensed Song in the YouTube Video (the "Licensing Contract").

24. On or about June 22, 2019, the YouTube Video was posted on YouTube.

25. Pursuant to the Digital Millenium Copyright Act ("DMCA") and YouTube's terms of service, copyright owners may submit takedown requests, for the unauthorized use of content, whereby YouTube may take down a video at issue or divert all revenue earned by the video to the complaining copyright owner.

26. On or about October 13, 2023, Plaintiff was informed that a DMCA takedown request was submitted to YouTube by the musical performers known as "The Living Tombstone" that own the copyright to the underlying composition contained in the Licensed Song (the "YouTube Takedown"). YouTube withheld all the revenue earned from the YouTube Video and refused to pay Plaintiff.

27. On or about the same date, Plaintiff emailed Defendant's agents requesting assistance with the YouTube Takedown.

28. On or about the same date, Defendant's agent, Angie Green, responded by stating, in part, "[y]ou got a license to use the remix from Charlie, but did you get a license

from TLT for the original?"

29. This position, as asserted by Defendant's agent, later by Defendant, and later by Defendant's attorney (hereinafter collectively referred to as the "Admission") directly contradicts Defendant's representations and warranties as contained in the Licensing Contract.

30. The Licensing Contract provides, *inter alia*, the following statements concerning the ownership of the Licensed Song:

> a) "Licensor represents and warrants to Licensee that Licensor owns the intellectual property listed under Exhibit A…";
>
> b) Licensor "represents and warrants…that…it has the power and authority to execute, deliver, and perform its obligations and grant the associated rights under this Agreement"; and
>
> c) "Licensor represents and warrants that the Licensed Property does not violate or infringe the copyrights….of any third parties."
>
> (with others, hereinafter collectively referred to as the "Warranties and Representations")

31. Subsequently, Plaintiff learned that each of the Warranties and Representations was fraudulent because the underlying copyright to the content contained in the Licensed Song was not owned or properly licensed by Defendant. As confirmed by the Admission, Defendant did not own the underlying copyright to the Licensed Song; Defendant had no legal right to sublicense the Licensed Song; and the Licensed Song infringed the copyrighted work owned by "The Living Tombstone".

32. At the time the Licensing Contract was entered, Defendant and his agents, as evidenced by the Admission, knew that Defendant did not own and did not have the right to distribute the Licensed Song. After the YouTube Takedown, Defendant, for the first time,

6

claimed that other licenses to the musical composition were necessary.

33. As a result of the YouTube Takedown, YouTube refused to pay Plaintiff revenue generated by the YouTube Video while the YouTube Takedown was in effect. During this time, the YouTube Video generated approximately 53.9 million views.

34. As a result of the YouTube Takedown, Plaintiff has suffered irreparable damages with YouTube due to the accusations that Plaintiff's content is infringing another party's rights. Further, it has caused Plaintiff to lose a not yet determined amount of revenue that Plaintiff currently believes to be in the minimum of hundreds of thousands of dollars.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

35. Plaintiff hereby realleges and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 34.

36. The Parties entered into a valid contract for Plaintiff's right to use the Licensed Song

37. Plaintiff performed its obligations under the Licensing Contract by remitting to Defendant a licensing fee.

38. Defendant has failed to perform his obligations under the Licensing Contract by giving Plaintiff the right to use a copyrighted work that Defendant did not legally own or have the legal right to license.

39. As a result of Defendant's breaches of the Licensing Contract, Plaintiff suffered damages which should be compensated.

### SECOND CLAIM FOR RELIEF
(Fraud)

40. Plaintiff hereby realleges and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 34.

41. Defendant knowingly made the material Warranties and Representations in the Licensing Contract which fraudulent statements came to light after the YouTube Takedown.

42. Some of these misrepresentations include, but are not limited to, the following:

a) "Licensor represents and warrants to Licensee that Licensor owns the intellectual property listed under Exhibit A…";

b) "represents and warrants…that…it has the power and authority to execute, deliver, and perform its obligations and grant the associated rights under this Agreement"; and

c) "Licensor represents and warrants that the Licensed Property does not violate or infringe the copyrights….of any third parties."

43. As evidenced by, *inter alia*, the Admission, Defendant made the foregoing material misrepresentations with knowledge of their falsity and intending to defraud Plaintiff.

44. Each of the foregoing misrepresentations were material because ownership to the Licensed Song was a material element of the Licensing Contract.

45. Each of the foregoing misrepresentations were made by Defendant with knowledge they were false because, as evidenced by, *inter alia*, the Admission, Defendant knew he did not own the right to reproduce or distribute another creator's musical composition.

46. Each of the foregoing misrepresentations were made by Defendant with the intent to defraud Plaintiff so that Plaintiff would enter the Licensing Contract and pay Defendant a licensing fee.

47. Defendant made these foregoing misrepresentations for the purpose of inducing Plaintiff to enter into the Licensing Agreement.

48. Plaintiff reasonably relied on the foregoing misrepresentations to enter into the Licensing Contract and to use the Licensed Property in the YouTube Video.

49. As a result of Defendant's fraud, Plaintiff suffered damages and should be compensated.

### THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation of Contract)

50. Plaintiff hereby realleges and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 34 and 41 - 49.

51. Based on the foregoing, there existed a special and privity-like relationship between the Parties that imposed a duty on Defendant to impart correct information to Plaintiff.

52. Defendant did not impart correct information to Plaintiff concerning his ownership of and legal right to use and license the Licensed Property.

53. Plaintiff reasonably relied on that information imparted by Defendant.

54. As a result of Defendant's negligent misrepresentation, Plaintiff suffered damages and should be compensated for its losses.

### FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

55. Plaintiff hereby realleges and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 34.

56. As a result of the foregoing, Defendant was unjustly enriched including, but not limited to, from Plaintiff's payment of the licensing fee.

57. Defendant was unjustly enriched at the expense of Plaintiff.

58. It is against equity and good conscience to permit Defendant to retain that unjust enrichment.

## FIFTH CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

59. Plaintiff hereby realleges and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 34.

60. Defendant knowingly and willfully sought to prevent performance of its duties and obligations contained in the Licensing Contract.

61. Defendant knowingly and willfully sought to withhold the benefits imparted on Plaintiff as a result of the Licensing Contract.

62. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff suffered damages and should be compensated.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that the Court order the following relief from Defendant:

I. compensatory damages;

II. punitive damages;

III. the costs of this action;

IV. pre-judgment interest; and

V. any such other and further relief as this Court shall deem necessary.

**LEE LAW PLLC**

Dated: January 12, 2024

Michael Lee (ML5346)
Lee Law PLLC
57 West 38th Street, 11th Floor
New York, NY 10018
Telephone: (212) 621-8239

Gerald N. Saggese III (GS 5346)
Whitman Breed Abbot & Morgan LLC
500 West Putnam Avenue
Greenwich, CT 06830
Telephone: (203) 862-2331

*Attorneys for Plaintiff*